UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INTERNATIONAL INDUSTRIAL
CONTRACTING CORPORATION,

       Plaintiff,

v.

SOFIR ITALIA S.R.L., et al,

       Defendants,

and

SOFIR ITALIA S.R.L., et al,

       Counter-Plaintiffs,

v.

INTERNATIONAL INDUSTRIAL
CONTRACTING CORPORATION,

       Counter-Defendant,

and

SOFIR ITALIA S.R.L., et al,

       Third-Party Plaintiffs,

v.

KOMATSU INDUSTRIES
CORPORATION, et al

       Third-Party Defendants.
_____/

Case No. 16-cv-13168

HON. MARK A. GOLDSMITH

**OPINION & ORDER
(1) GRANTING IICC'S MOTION FOR LEAVE TO FILE SECOND AMENDED
COMPLAINT (Dkt. 58) AND (2) GRANTING KOMATSU'S MOTION TO DISMISS
THIRD-PARTY COMPLAINT (Dkt. 62)**

1

This matter is before the Court on Plaintiff International Industrial Contracting Corporation's ("IICC") motion for leave to file second amended complaint (Dkt. 58) and Third-Party Defendants Komatsu America Industries LLC and Komatsu Industries Corporation's ("Komatsu") motion to dismiss the third-party complaint filed by Sofir Italia s.r.l ("Sofir"), Alvaro Fregolent, and Marco Vergani (Dkt. 62). Because oral argument will not aid the decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). For the reasons that follow, both motions are granted.

## I. BACKGROUND

The factual background of this case was laid out in the Court's opinion on Sofir's motion to dismiss. See Int'l Indus. Contracting Corp. v. Sofir Italia s.r.l., No. 16-13168, 2017 WL 3499899 at *1-*2 (E.D. Mich. Aug. 16, 2017). In summary, Komatsu was seeking an American contractor to install its presses in two Chrysler Group LLC plants located in Michigan. Id. at *1. Komatsu contacted IICC and issued an invitation to quote the project; included with the invitation was a "table that indicated the types and quantities of cables that would have to be pulled and connected in connection with the installation . . . ." Id. After IICC submitted a quote to Komatsu, Sofir contacted IICC and communicated that Sofir was the supplier of the presses for the project; Sofir also sent IICC a Request for Quotation ("RFQ") for installation services. Id. Based on information provided by Komatsu and Sofir's RFQ, IICC submitted a quote in June 2014, first to Komatsu and then to Sofir after it was instructed to do so. Id. IICC submitted several revised quotes to Sofir through August 2014. Id.

On October 10, 2014, IICC and Sofir entered into a contract for the installation of the Komatsu presses "in accordance to the Technical Specification." Id. at *2. As the installation process began, IICC discovered that it actually had to pull and connect more than double the

2

number of cables than it had initially believed. Id. IICC determined the number of cables and connections required and informed Sofir. Id. Sofir approved a number of the changes, but has refused to pay for the installation of additional cables. Id.

IICC filed suit, and Sofir, Fregolent, and Vergani filed a motion to dismiss for failure to state a claim. The Court dismissed IICC's fraud and statutory-conversion claims, but afforded IICC the opportunity to file a motion for leave to file an amended complaint. See id. at *12. IICC took advantage of this opportunity and filed a motion for leave to file an amended complaint. See Pl. Mot. for Leave (Dkt. 33). Sofir, Fregolent, and Vergani opposed the motion, see Def. Resp. to Mot. for Leave (Dkt. 38), and the Court ultimately afforded IICC another opportunity, see 11/8/2017 Order (Dkt. 50).

IICC filed a motion for leave to file a second amended complaint. See Pl. Mot. for Leave (Dkt. 58). The proposed complaint would amend IICC's statutory conversion claim and substitute the dismissed fraud claims with claims for rescission due to unilateral or material mistake. See Pl. Br. to Mot. for Leave (Dkt. 59). Sofir filed a response (Dkt. 63) arguing that the amendment would be futile, and IICC filed a reply (Dkt. 65).

Additionally, after the Court's opinion on the motion to dismiss, Sofir, Fregolent, and Vergani filed their answer, which also included a third-party complaint against Komatsu. See Third-Party Compl. (Dkt. 34). The complaint brings claims for indemnification and negligence. Id. In lieu of filing an answer, Komatsu brought a motion to dismiss the third-party complaint for failure to state a claim. See Komatsu Mot. (Dkt. 62). Sofir filed a response (Dkt. 67), and Komatsu filed a reply (Dkt. 69).

## II. STANDARD OF REVIEW

On a motion to dismiss pursuant to Rule 12(b)(6), "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007). The motion "should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. The Court must assume that all alleged facts are true, even when their truth is doubtful, and must make all reasonable inferences in favor in of the plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-556 (2007). A complaint will be dismissed if it does not state a "plausible claim for relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

Federal Rule of Civil Procedure 15(a)(2) governs amendments to complaints by leave, and provides that the "court should freely give leave when justice so requires." The Supreme Court has explained that a plaintiff should be granted leave to amend "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." Rose v. Hartford Underwriters Ins. Co., 203 F.3d 417, 420 (6th Cir. 2000).

### III. ANALYSIS

**A. IICC's Motion for Leave to File Second Amended Complaint**

IICC seeks to file a second amended complaint, amending its initial conversion count and adding claims for reformation due to unilateral or mutual mistake in place of its previous fraud claims. Sofir contends that the amendment would be futile, arguing: (i) that IICC has not alleged a cognizable claim for reformation based on mutual mistake, because (a) it has not been pleaded

4

adequately, (b) IICC assumed the risk by contracting on the basis of information it knew to be incomplete, and (c) IICC cannot rely on the Komatsu documents to show mutual mistake; (ii) IICC has not alleged a cognizable claim for reformation based on unilateral mistake because it has made no allegation of fraud; (iii) IICC has not sufficiently pleaded conversion against Sofir; and (iv) IICC has not sufficiently pleaded conversion against Fregolent and Vergani.

The Court grants IICC's motion. Regarding mutual mistake, Michigan law defines it as "an erroneous belief, which is shared and relied on by both parties, about a material fact that affects the substance of the transaction[.]" Westfield Ins. Co. v. Enterprise 522, LLC, 34 F. Supp. 3d 737, 745 (E.D. Mich. 2014) (internal quotation marks omitted). Here, the proposed amended complaint alleges that Sofir possessed all the information that Komatsu provided to IICC regarding the presses, and that the parties had made the "actual and reasonable estimation of the amount of cables and connections required for installation of the presses based upon the information available." Proposed Am. Compl., Ex. 1 to Mot. for Leave, ¶¶ 52-53 (Dkt. 58-1). It further alleges that the "existence of the numerous additional cables and connections necessary to install the presses subject to the Contracts was unknown to the parties at the time they entered the Contracts." Id. ¶ 55. It is a plausible reading of IICC's complaint, making inferences in favor of IICC, that both parties erroneously believed, based on the Komatsu table, that a certain estimated number of cables was needed, when in fact far more cables were necessary to install the presses. Because the number of cables was a material fact relating to the contract, about which the parties were arguably mistaken, IICC has sufficiently pleaded mutual mistake in the proposed amended complaint.[1]

---

[1] The Court is also not convinced by Sofir's argument that IICC assumed the risk by entering into the contract with incomplete information. Sofir is correct that a party assumes the risk of a mistake if "he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient." See Lenawee County Bd. of Health v. Messerly, 331 N.W.2d 203, 210 n.12 (Mich. 1982) (quoting

5

IICC also adds, in the alternative, a count for reformation due to unilateral mistake. In the proposed amended complaint, IICC alleges that Sofir knew that numerous additional cables and connections would be necessary to install the presses, and that it would be inequitable to allow Sofir to profit from IICC's mistaken understanding of how many cables and connections would be needed where Sofir knew that IICC held this mistaken understanding. Proposed Am. Compl. ¶¶ 62-64. Sofir responds that IICC's claim fails, because Michigan law requires evidence of fraud to support a finding of unilateral mistake.

However, Michigan law is clear that a showing of fraud is not necessary. See Barryton State Sav. Bank v. Durkee, 37 N.W.2d 892, 894 (Mich. 1949) ("There is, however, still another class of cases-that where one party to an instrument has made a mistake and the other party knows it and conceals the truth from him. Such inequitable conduct accompanying a mistake is generally held to be sufficient ground for reformation of the instrument in question."); Johnson Family Ltd. P'Ship v. White Pine Wireless, LLC, 761 N.W.2d 353, 366 (Mich. Ct. App. 2008) ("Reformation would be warranted if [defendant] knew that the [plaintiff] intended the restrictions to be included within the deed, recognized that the deed did not accurately express that intent, and remained silent about the mistake."). The class of cases described in Barryton is precisely what IICC alleges here – Sofir knew that IICC was mistaken yet entered into the contract on the basis of the mistaken

---

RESTATEMENT (SECOND) OF CONTRACTS, § 154(b)). Despite any disclaimers accompanying the Komatsu table, the Court cannot conclude at this stage that IICC treated its "limited knowledge as sufficient," as discovery can flesh out what knowledge IICC had and to what extent it viewed it as limited. IICC claims that it made a reasonable estimation of the number of cables that would be required based on the information it had, and that it entered into the contract based on this reasonable estimation. Proposed Am. Compl. ¶ 53. This is sufficient to survive a motion to dismiss. For the same reasons, the Court is not persuaded by Sofir's argument that IICC cannot rely on the Komatsu documents to show mutual mistake. Any disclaimers in the Komatsu documents would not necessarily foreclose the IICC allegation that it made a reasonable estimation of how many cables would be required and acted based on that estimation.

belief regardless. Thus, IICC's claim of unilateral mistake is not futile, and it may proceed on that claim.

Finally, IICC seeks to amend its conversion count. In its opinion on the first motion to dismiss, the Court explained that IICC "failed to adequately allege how any of the Defendants used the funds for their 'own use' to support the statutory conversion claim," noting that IICC merely provided a "formulaic recitation" of that element. IICC, 2017 WL 3499899 at *10. IICC has now cured that deficiency. In the first amended complaint, IICC alleged only that Sofir used the "funds for their own purposes and not for the purpose of paying IICC." First Am. Compl. ¶ 79 (Dkt. 16). Now, in the proposed amended complaint, IICC alleges that the funds were converted "to Defendants' own use by using the funds for Sofir's expenses, the salaries and bonuses of Defendants Fregolent and Vergani, and dividends to shareholders, among other uses." Proposed Am. Compl. ¶ 87. These allegations are sufficient to survive a motion to dismiss, as it provides more than a formulaic recitation of the elements of statutory conversion. Accordingly, IICC will be allowed to amend its conversion claim.[2]

For these reasons, the Court grants IICC's motion for leave to amend.

**B. Komatsu's Motion to Dismiss**

Sofir has filed a third-party complaint, bringing claims for indemnification and negligence against Komatsu. See Third-Party Compl. (Dkt. 34). In the complaint, Sofir alleges that Komatsu

---

[2] The Court will also allow the conversion charge against Vergani and Fregolent to proceed. Defendants argue that "[c]omingling any fund with Sofir's general fund does not constitute a conversion of the fund for Vergani or Fregolent's individual purposes." See Def. Resp. at 18 (emphasis in original). But IICC alleges that both Fregolent and Vergani are corporate officers who directed the "collection, handling, retention and/or distribution of Project Funds"; that they "convert[ed] those funds to Defendants' own use by using the funds for Sofir's expenses, the salaries and bonuses of Defendants Fregolent and Vergani, and dividends to shareholders, among other uses." Proposed Am. Compl. ¶¶ 87-89. These allegations are sufficient to survive the motion to dismiss stage, and therefore the amendment would not be futile.

was solely responsible for the content of the table on which IICC relied, and thus Komatsu should be required to indemnify Sofir for any liability that may be imposed. See id. ¶¶ 17-24. Sofir has also alleged that Komatsu owed Sofir a duty to use ordinary care in connection with its preparation and delivery of the table to IICC, and that it did not exercise the necessary degree of care. See id. ¶¶ 25-29.

### 1. Indemnification Claim

Komatsu argues that the indemnification claim must be dismissed because, under Michigan law, a common-law indemnification claim can only be sustained if the party bringing the claim is free from personal fault. Sofir responds that the rule cited by Komatsu only applies to negligence claims, and that no such claim has been brought against it by IICC. Sofir's position misapprehends the law pertaining to indemnity.

Common-law indemnity – as distinct from contractual indemnity, which has no application here – can only arise where the indemnitee has paid, or could be made to pay, a third-party, solely as a result of the wrongful act of the indemnitor, for which the law imposes an obligation on the indemnitee to pay the third-party. One classic example is the automobile owner, who is vicariously liable for the accident caused by the driver of his vehicle, by virtue of the owner liability statute; the owner may recover indemnity from the driver of the owner's vehicle for the judgment that the owner has paid, because the owner is liable solely by operation of law. See Dale v. Whiteman, 202 N.W.2d 797, 800 (Mich. 1972) (holding that where a car-wash customer was sued by an individual injured in a crash caused by the car-wash attendant to whom the owner had entrusted his car, the owner was entitled to indemnity from attendant's employer).

A critical requirement is that the would-be indemnitee be liable only vicariously or by operation of law, not through any wrongful act of his own. As stated by the Michigan Supreme

8

Court, "[i]ndemnity serves to shift the burden of loss when equity so requires; however, the right can only be enforced where liability arises vicariously or by operation of law from the acts of the party from whom indemnity is sought." Langley v. Harris Corp., 321 N.W.2d 662, 667 (Mich. 1982). Thus, if the indemnity claimant is alleged by the primary plaintiff to have acted wrongfully in the least, indemnity is not available. Botsford Continuing Care Corp. v. Intelistaf Healthcare, Inc., 807 N.W.2d 354, 361 (Mich. Ct. App. 2011) ("[A] common-law indemnification action 'cannot lie where the plaintiff was even .01 percent actively at fault.'") (quoting St. Luke's Hospital v. Giertz, 581 N.W.2d 665, 669 (Mich. 1998)).

Freedom from fault applies not simply to negligence claims asserted against the would-be indemnitee, but to any claim of wrongful conduct against the would-be indemnitee, whether or not it sounds in negligence. For example, in Frantz v. City of Pontiac, 432 F. Supp. 2d 717 (E.D. Mich. 2006), the court dismissed the city's claim for indemnification against the union, where both were sued for discrimination, because even if the city's role was passive, the complaint alleged some action by the city in negotiating and executing the collective bargaining agreement that gave rise to the claims. The court explained: "[t]his lawsuit could simply not result in the City being held vicariously liable to another…through no fault of [its] own." Id. at 721 (internal quotation marks omitted).

And whether the would-be indemnitee is alleged to have acted wrongfully, even in the least, is garnered solely from the complaint filed against it. See Peeples v. City of Detroit, 297 N.W.2d 839, 842 (Mich. Ct. App. 1980) (freedom from fault based on whether claim against

9

would-be indemnitee is based on derivative or vicarious liability, which, in turn, is determined by looking at primary plaintiff's complaint).[3]

Indemnification is not proper, given the allegations in IICC's complaint. IICC alleges: (i) breach of contract for failing to make payments and failing to provide complete, accurate, and constructible design documents; (ii) mutual mistake as it relates to the mutual misunderstanding of the number of cables required; (iii) unilateral mistake, as Sofir knew that more cables would be necessary; (iv) abandonment/quantum meruit, as the parties continued the project to completion and Sofir accepted the benefits of IICC's work; (v) violation of the Michigan Building Contract Fund Act in connection to the construction; and (vi) common-law and statutory conversion because Defendants have comingled project funds with general Sofir funds. None of these claims bases Sofir's liability on theories of vicarious liability or by operation of the law. Rather, each claim is premised on a violation by Sofir of some duty – based on contract, tort law, or statutory law – owed directly to IICC.[4] There is simply no plausible claim for indemnity.[5]

For these reasons, Komatsu's motion is granted as it relates to the indemnification claim.

### 2. Negligence Claim

---

[3] If the primary claim has been tried, then jury findings may also be consulted. Botsford, 807 N.W.2d at 361. Because the primary claim in our case has not been tried, only IICC's complaint is the basis for determining allegations of fault against Sofir.

[4] The Court is unaware of any authority allowing common-law indemnity for breach of contract claims, and Sofir has cited none. Allowing it would run contrary to the principle that common-law indemnity is allowed only where the would-be indemnitee can be held liable for the acts of others or by operation of the law – circumstances not found in breach of contract claims.

[5] While Sofir claims that its obligations, if any, to IICC only arose by operation of law, Resp. at 10, that statement is simply incorrect. The claims against it are based on its own actions, not the sole result of Komatsu's action for which the law might somehow hold Sofir liable.

Komatsu's argument that the negligence claim should be dismissed is twofold. First, it argues that the negligence claim is simply the indemnification claim by another name. Second, Komatsu argues that no duty of care exists between Komatsu and Sofir that would give rise to a negligence claim. Sofir responds by characterizing Komatsu's first argument as a strawman, while not meaningfully responding to Komatsu's second argument.

Regardless of whether the negligence claim is simply the indemnification claim by another name, the Court grants the motion. In the third-party complaint, Sofir alleges that Komatsu breached its duty of care. See Third-Party Compl. ¶ 29. Sofir alleges that "Komatsu owed Sofir a duty to use ordinary care in connection with Komatsu's preparation and delivery of the Komatsu Table to IICC." Id. ¶ 27. Although the allegations in the complaint must be accepted as true, "more than labels and conclusions or a formulaic recitation of the elements of a cause of action" is required. Marais v. Chase Home Finance LLC, 736 F.3d 711, 713 (6th Cir. 2013) (internal quotation marks omitted). Put another way, it is not enough that Sofir asserts that Komatsu owed it a duty to use ordinary care in furnishing the table to IICC; Sofir must supply facts plausibly establishing that duty.

Sofir has not done so here. "Duty is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff and concerns the problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other." Weinstein v. Siemens, 673 F. Supp. 2d 533, 547 (E.D. Mich. 2009) (quoting Buczkowski v. McKay, 490 N.W.2d 330, 333 (Mich. 1992)). The Michigan Supreme Court has held that "[b]efore a duty can be imposed, there must be a relationship between the parties." Hill v. Sears, Roebuck & Co., 822 N.W.2d 190, 196 (Mich. 2012).

Simply put, Komatsu providing information to IICC does not create a relationship between Komatsu and Sofir. Sofir has alleged no facts establishing a duty by Komatsu <u>to Sofir</u> by virtue of anything Komatsu did <u>in relation to IICC</u>. All that Sofir has alleged is that Komatsu provided certain information to IICC that was not accurate and failed to provide IICC with adequate warnings about the correctness of the information. But there are no facts alleged supporting the view that any deficiencies in performance or conduct relative to IICC somehow violated a duty owed to Sofir.

Nor has Sofir pointed to any case that, upon examination, actually supports its position. It cites <u>Mandel v. United States</u>, 793 F.2d 964 (8th Cir. 1986), where the court affirmed the district court's conclusion that, under Arkansas law, the National Park Service had a duty to warn patrons of submerged rocks in a river that ran through an area under its control as well as beyond. The failure to disclose was premised on brochures furnished by the Park Service to park patrons; the brochures failed to mention anything about submerged rocks in areas adjacent to, and accessible from, the park. The brochures were produced specifically for the benefit of patrons and furnished directly to them by the Park Service, which knew that patrons would rely on what is contained or omitted from the brochures. Here, by contrast, there are no allegations by Sofir that Komatsu prepared the table for Sofir's benefit, or that Komatsu acted knowing Sofir would rely on the table. In fact, Sofir alleges that the table was given by Komatsu to IICC, <u>see</u> Third-Party Compl. ¶ 21, and there is no allegation that Sofir did rely on it.

Sofir's citation to <u>Williams v. Polgar</u>, 215 N.W.2d 149 (Mich. 1974), also misses the mark. The court held that a real estate abstractor could be held liable for a faulty abstract where the damaged party's reliance was reasonably foreseeable, even though the party was not in privity with the abstractor. Here, there is no allegation of reliance at all.

12

The facts alleged in various filings show that all three parties were sophisticated parties; all were able to protect themselves through appropriate documentation and effective lawyering; and no fact is alleged showing how or why Komatsu would or should owe any obligation to Sofir beyond what a contract or statute might require. At most, Sofir has only established that Komatsu might have owed a duty to IICC – an assertion that IICC itself does not make in this case – but it has not explained how that duty extends to itself.

For these reasons, Komatsu's motion to dismiss the negligence claim is granted.[6]

## IV. CONCLUSION

For these reasons, the Court grants IICC's motion for leave to file second amended

---

[6] Sofir states in its response that if Komatsu's motion is granted, Sofir should be granted leave to amend. But requests for leave should be set out in a motion for leave to amend, not in a response to a motion to dismiss. See Beck v. FCA US LLC, 273 F. Supp. 3d 735, 763 n.16 (E.D. Mich. 2017). Further, the request does not set out any additional facts that Sofir would allege in an amended complaint against Komatsu. A bare request for leave to amend, without supplying what additional facts would be pled, is not sufficient to show that leave to amend would be appropriate. See Darby v. Century Business Services, Inc., 96 Fed. App'x 277, 286-287 (6th Cir. 2004) (" In view of the fact that plaintiffs have failed to articulate what additional facts they would allege or how an amended complaint would comport with the PSLRA's pleading requirements, the district court's decision [to deny leave to amend] was not an abuse of discretion."). Finally, this matter has been pending for nearly twenty months and concerns a business transaction about which Sofir has ample knowledge. Sofir has had more than enough time to set forth a legally viable claim. Its tardiness, combined with the prejudice that both Komatsu and the Court would sustain by enduring another round of pleadings, cements the Court's conclusion that leave should not be granted. See Phelps v. McClellan, 30 F.3d 658, 662-663 (6th Cir. 1994) (holding that, in determining what constitutes prejudice, the court is to consider whether the new claim would "require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction").

complaint (Dkt. 58) and Komatsu's motion to dismiss third-party complaint (Dkt. 62). IICC shall file its amended complaint on or before **May 8, 2018.**

SO ORDERED.

Dated: May 4, 2018                                  s/Mark A. Goldsmith

                                                         U.S. District Court Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 4, 2018, by electronic and/or ordinary mail.

                              s/Julie Owens acting in the absence of Karri Sandusky
                              Case Manager